Mr. T.E. Zepp, Chief South Trail Fire Protection Rescue Service District 2100 Crystal Drive Fort Myers, Florida 33907
Dear Chief Zepp:
This is in response to your request for an opinion on the following questions:
 1. MAY THE SOUTH TRAIL FIRE PROTECTION AND RESCUE SERVICE DISTRICT ENTER INTO A BINDING AGREEMENT WITH A PRIVATE DEVELOPER TO RENDER SUCH FIRE PROTECTION AND RESCUE SERVICES TO HIS DEVELOPMENT WHICH IS LOCATED OUTSIDE OF THE DISTRICT'S BOUNDARIES?
2. MAY THE DISTRICT ACTUALLY RENDER SUCH SERVICES?
 3. MAY THE DISTRICT CHARGE A FEE FOR SUCH SERVICES ACTUALLY RENDERED? IF SO, WITH WHAT LIMITATIONS, IF ANY, ON THE FEE?
 4. MAY THE DISTRICT CHARGE AN ANNUAL FEE FOR AGREEING TO PROVIDE SUCH SERVICES (EVEN IF NONE ARE ACTUALLY RENDERED), WHICH FEE WOULD APPROXIMATE THE PRODUCT OF THE ASSESSED VALUATION OF THE DEVELOPMENT AND THE DISTRICT'S AD VALOREM MILLAGE FOR THAT YEAR?
 QUESTION ONE
The South Trail Fire Protection and Rescue Service District is a special taxing district located within Lee County created by Ch. 76-412, Laws of Florida. Section 4 of Ch. 81-419, Laws of Florida, amending s 10 of Ch. 76-412 provides that the fire control board as the governing body of the district is "authorized and empowered to buy, own, lease, and maintain fire protection and rescue services within the district" and further to "purchase, acquire by gift, own, lease and dispose of fire protection and rescue service equipment and property, real and personal, that the board may from time to time deem necessary or needful to carry out its purposes and functions within the district." To carry out the purposes of Ch. 76-412, the board "shall have the right, power, and authority to levy millage tax against the taxable real estate within the district" which "shall not exceed $2.25 per $1,000 of net taxable assessed valuation." Section 1 of Ch. 81-418, Laws of Florida. Andsee, s 9 of Ch. 76-412, which authorizes the board to borrow money for purposes of the district, within specified limits, and "to issue revenue anticipation certificates for the purpose of paying all or any part of the cost of purchasing any real or personal property for the district." I find no provision in Ch. 76-412, as amended by Chs. 81-414, 81-418, 81-419, Laws of Florida, however, which expressly provides for or authorizes the fire control district to enter into binding contracts to provide fire protection and rescue services to lands or improvements thereon located outside the district boundaries.
The general rule of law applicable to special districts as stated by this office and the courts of this state is that such districts possess only such powers and authority as have been expressly granted by law or necessarily implied therefrom in order to carry out an expressly granted power. See, Forbes Pioneer Boat Line v. Board of Commissioners of Everglades Drainage District, 82 So. 346
(Fla. 1919); State v. Smith, 35 So.2d 650 (Fla. 1948); Edgerton v. International Co., 89 So.2d 488 (Fla. 1956); AGO's 82-89, 80-55, 76-200, 74-169, 73-374. In the Forbes Pioneer Boat Line case at page 351, the court in rejecting the contention that the power to maintain a canal carries with it the power to collect tolls stated: "Ample provision by taxation and loans has been made for maintenance of the canals, locks, and other words of drainage, showing a clear intention of the Legislature, by its exclusion thereof, that from no other source than those named in the act is the revenue for such maintenance to come." The power of the state to contract is a legislative prerogative and no board, officer or special district can contract without legislative authority. This power must be exercised in the manner and form as directed by the Legislature. See, AGO 68-44. See generally, 81A C.J.S. States s 156 (1977). Thus, as statutory entities, special districts possess no inherent power to enter into binding contracts but rather may exercise such power only when expressly or impliedly authorized by law to do so. Chapter 76-412, Laws of Florida, as amended, does not expressly authorize the district to enter into binding contracts to render fire protection and rescue services to private developers or developments located outside the district, nor can I say that such power may be necessarily implied from the powers expressly granted therein. Therefore, it is my opinion that the South Trail Fire Protection and Rescue Service District does not have such authority.
QUESTION TWO
Section 2. (3) of Ch. 76-412, Laws of Florida, provides: "Nothing herein shall deny the right of the chief or other governing officials of the district to render such services to communities adjacent to the land described in subsection (2), or such other places as from time to time may be deemed desirable." The language of this provision is plain and clearly provides legislative authorization for the district to provide fire protection and rescue services to communities adjacent to the boundaries of the district and to other places outside the district. However, the use of the language, "such other places as from time to time may be deemed desirable" (e.s.), would appear to be a legislative direction that such services would only be occasional and permissive rather than a continuous duty placed on the district and the owners or inhabitants of "such other places" are not vested with any right to such services — but this is a matter left to the reasonable exercise of discretion by the chief or other governing officials of the district.
QUESTION THREE AND FOUR
Your third and fourth questions raise similar issues and therefore will be answered together. You ask whether a fee can be charged for services actually rendered or whether an annual fee could be charged pursuant to an agreement to provide such services as and when required.
While the district is authorized to render fire protection and rescue services to adjacent communities and other places outside the district "as from time to time may be deemed desirable," the authority to charge fees therefor has not been granted by statute. The general rule is that public officers may collect fees and charges for services rendered only when and to the extent clearly authorized by law. See, e.g., Bradford v. Stoutamire, 38 So.2d 684
(Fla. 1948); AGO's 79-35, 79-8, 75-249, 75-250. Moreover, it is not necessary or indispensable to charge and collect such fees in order to carry out the function of providing such discretionary and permissive services, especially on an occasional basis as apparently contemplated by the Legislature. See the response to Question Two. Although an express power duly conferred by law may include the implied authority to use the means necessary to make the express power effective, such implied authority does not warrant the exercise of a substantive power not conferred. See, Molwin Investment Co. v. Turner, 167 So. 33 (Fla. 1936); Southern Utilities Co. v. City of Palatka, 99 So. 236 (Fla. 1923); AGO's 82-89, 73-374. See also, Florida State University v. Jenkins,323 So.2d 597 (1 D.C.A.Fla. 1975) (power to be implied must be essential in order to carry out expressly granted power or duty imposed); Haines City v. Certain Lands, Etc., 178 So. 143
(Fla. 1937) (power sought to be implied from express grant of power must be necessary, indispensable or essential, not merely convenient, to the attainment of the declared objects and purposes).
Thus, in AGO 82-89, this office concluded that the Mat'lacha-Pine Island Fire Control District, in the absence of any statute so providing, was not authorized by law to borrow money for construction purposes. That opinion reasoned that while the special act creating that district authorized the district's governing body to purchase, own and dispose of fire fighting equipment and property, it did not expressly authorize the district to borrow money, and such power could not be implied.Accord, AGO's 76-200, 73-374.
The well-established principle ofexpressio unius est exclusioalterius is applicable to this question. This principle requires that, when the enactment expressly provides the manner in which a thing is to be done then it impliedly prohibits the thing from being done in a different manner. While the law does not in express terms prohibit the doing of a thing in a different manner, the fact that the law has prescribed the manner in which the subject matter shall be done is itself a prohibition against a different manner of doing it. See, Thayer v. State, 335 So.2d 815
(Fla. 1976); Dobbs v. Sea Isle Motel, 56 So.2d 341 (Fla. 1952); Ideal Farms Drainage District v. Certain Lands, 19 So.2d 234
(Fla. 1944). Therefore, when the Legislature prescribes the manner of doing an act, the manner prescribed is exclusive, and it is beyond the power of executors of the law to carry out the law in a different manner. Chapter 76-412, as amended, specifically provides that the funding for the fire protection and rescue services performed by the district shall be by means of an ad valorem tax as well as by borrowing money for purposes of the district, or issuing revenue anticipation bonds to purchase any real or personal property. As stated above, I discern no legislative intent, express or implied, for the district to be empowered to charge fees, annual or otherwise, for rendering fire protection or rescue services outside the district. There being no statutory provision which either expressly or by necessary implication authorizes the South Trail Fire Protection and Rescue Service District to charge fees, annual or otherwise, the district is not authorized by law to do so.
In summary, unless legislatively amended, it is my opinion:
 1. The South Trail Fire Protection and Rescue Service District does not have express or implied statutory authorization to enter into binding contracts to provide fire protection and rescue services to private developers or developments located outside the district's boundaries.
 2. The district is authorized to render fire protection and rescue services to communities adjacent to the district's boundaries and other places as from time to time may be desirable in the discretion of the chief or other governing officials of the district; however, the district's enabling legislation appears to contemplate that such services will be rendered on an occasional and permissive basis and the owners or inhabitants of such adjacent lands and other places are not granted any right to receive such services from the district.
 3. The district is not expressly or impliedly authorized by law to charge and collect any fees, annual or otherwise, for rendering such discretionary and permissive services or pursuant to an agreement to render such services outside the district boundaries.
Sincerely,
Jim Smith, Attorney General
Prepared by: Craig Willis, Assistant Attorney General