The Honorable Charlie Green Clerk of Courts Lee County Post Office Box 2469 Fort Myers, Florida 33902
Dear Mr. Green:
This is in response to your request for an opinion on substantially the following questions:
 1. MAY THE CLERK OF THE CIRCUIT COURT COPYRIGHT COMPUTER PROGRAMS FOR CERTAIN FINANCIAL AND ACCOUNTING FUNCTIONS?
 2. IF THE CLERK IS AUTHORIZED TO COPYRIGHT SUCH PROGRAMS, MAY HE CHARGE OTHER CLERKS OR OTHER PUBLIC AGENCIES A FEE FOR SUCH PROGRAMS IN ORDER TO RECOVER THE EXPENSE INCURRED IN DEVELOPING THEM?
You state in your letter of inquiry that in connection with the performance of the duties and responsibilities of the Office of Clerk of the Circuit Court, your staff has developed certain computer programs for certain financial and accounting functions. You further state that clerks from other counties and other agencies have inquired of your office whether they may obtain these programs for their own use. Thus, you wish to know if you have the authority to copyright these programs in order to prevent their unauthorized use, and if so, charge other clerks and other public agencies a fee for such programs in order to recover the expense incurred in developing them.
The clerk of the circuit court is a county officer, and, unless otherwise provided by county charter or special law approved by vote of the electors, the ex officio clerk of the board of county commissioners, county auditor, county recorder, and custodian of county funds, whose powers and duties in any of his several capacities are fixed by law. See, s. 5(c), Art. II, and s. 1(d), Art. VIII, State Const.; see also, s. 16, Art. V, State Const., and Alachua County v. Powers, 351 So.2d 32, 35 (Fla. 1977). While the clerk of the court derives his authority and responsibility from both constitutional and statutory provisions, Alachua County v. Powers, supra at 35, the clerk's powers, as those of other constitutional county officers, are limited to those which have been expressly provided or are clearly necessary to give meaning and effect to those which have been expressly granted. Security Finance Company v. Gentry, 109 So. 220 (Fla. 1926). See, e.g., AGO's 78-95 and 75-161; and Edgerton v. International Company,89 So.2d 488 (Fla. 1956). And see, Overholser v. Overstreet,383 So.2d 953 (3 D.C.A.Fla., 1980) (clerk's authority is entirely statutory, and his official action to be binding upon others, must be in conformity with such statutes); Ferlita v. State, 380 So.2d 1118
(2 D.C.A.Fla., 1980) (clerk of court's power to act must clearly appear from particular statute). Further, if any doubt exists as to the existence of authority, it should not be assumed. Gessner v. Del-Air Corporation, 17 So.2d 522 (Fla. 1944).
Chapter 28, F.S., which sets forth the powers and duties of the clerks of the circuit court, contains no provision authorizing or relating to the copyrighting of computer programs developed by the clerk or his staff. No other general or special law expressly authorizing such copyrighting by the clerk has been brought to the attention of this office. Compare, e.g., s. 240.229, F.S., authorizing each university to perform all things necessary to secure letters of patent, copyrights, and trademarks on any work products and to enforce its rights therein. Nor can I conclude that such copyrighting is essential to or necessary for the implementation of any other express duty and responsibility of the clerk. See generally, Florida State University v. Jenkins,323 So.2d 597 (1 D.C.A.Fla., 1975) (power to be implied must be essential in order to carry out expressly granted power or duty imposed); Haines City v. Certain Lands, Etc., 178 So. 143
(Fla. 1937) (power sought to be implied from express grant of power must be necessary, indispensable or essential, not merely convenient to the attainment of the declared objects and purposes); Southern Utilities Company v. City of Palatka,99 So. 236 (Fla. 1923). You ask whether the right to copyright is vested solely with the Department of State pursuant to ss. 286.021 and286.031, F.S. Section 286.021 in part provides that the legal title to any copyright now owned or held, or as may be hereafter be acquired, owned or held by the state, or any of its boards, commissions or agencies is granted to and vested in the Department of State. Section 286.031 provides that the Department is authorized to secure copyrights and to take any and all action necessary to protect the same against improper or unlawful use of infringement. These provisions of law relate to the department's function to secure, hold and protect copyrights for the state and its boards, commissions or agencies. While the several counties are political subdivisions of the state and are sometimes referred to as agencies of the state, they are separate and distinguishable local governmental units that have no inherent power, but derive their powers from the sovereign state and operate independently thereof. See, Amos v. Mathews, 126 So. 308 (Fla. 1930). When the Legislature intends to include counties within the ambit of a statute, express inclusion is usually made or their inclusion as political subdivisions of the state is made. See, e.g., ss.119.011(2), 120.52(1), 121.021(10), 205.022(2), 218.31(1), and219.01(1), F.S. And see, Ch. 20, F.S., setting forth the organizational structure of state government. Powers delegated to the Department of State pertaining to the state and its boards, commissions or agencies by the State Legislature therefore would not appear to be relevant to the issues presented herein.
Chapter 119, F.S., Florida's Public Records Law, makes all public records made or received pursuant to law or ordinance or in connection with the transaction of official business by any public agency open for inspection by any person. Sections 119.01 and119.07, F.S., as amended by Chs. 86-11, 86-21, 86-109, and 86-163, Laws of Florida. The custodian of the public record in question must furnish a copy of the record upon demand and payment of the fee prescribed by law or, if no fee is prescribed, upon payment of the actual cost of duplication. The actual cost of duplication is defined to mean "the cost of the material and supplies used to duplicate the record, but . . . [not] the labor cost or overhead cost associated with such duplication." Section 119.07(1)(a), F.S. The term "public records" is defined by s. 119.011(1), F.S., to mean:
 [A]ll documents, papers, letters, maps, books, tapes, photographs, films, sound recordings or other material, regardless of physical form or characteristics, made or received pursuant to law or ordinance or in connection with the transaction of official business by any agency.
See also, Shevin v. Bryon, Harless, Schaffer, Reid and Associates, Inc., 379 So.2d 633, 640 (Fla. 1980), stating that for purposes of Ch. 119, a "public record" is "any material prepared in connection with official agency business which is intended to perpetuate, communicate, or formalize knowledge of some type. . . ." And see, Seigle v. Barry, 422 So.2d 63 (4 D.C.A.Fla., 1982), pet. for rev. den'd, 431 So.2d 988 (Fla. 1983). Thus, it is clear that a computer program developed by a public agency in order to perform certain financial and accounting functions is a public record for purposes of Ch. 119, as amended. Further, I am not aware of, nor has my attention been drawn to, a statute authorizing the clerk to charge and collect a fee from persons seeking access to computer stored information in order to recoup the costs associated with developing the agency's program. Compare, s. 119.085, F.S., authorizing a custodian to charge a fee for remote electronic access to public records.
In regard to any exemption of such records from the requirements of Ch. 119, F.S., as amended, the Florida Supreme Court in Wait v. Florida Power and Light Company, 372 So.2d 420, 425 (Fla. 1979), held that "only those public records that are provided by statutory law to be confidential or which are expressly exempted by general or special law" are exempt from public disclosure and copying. As you point out in your letter s. 119.07(3)(r)2., F.S., provides an exemption for certain sensitive agency-produced data processing software. That exemption provides that:
 "Sensitive" means only those portions of data processing software, including the specifications and documentation, used to:
 a. Collect, process, store, and retrieve information which is exempt from the provisions of subsection (1);
 b. Collect, process, store, and retrieve financial management information of the agency, such as payroll and accounting records; or
 c. Control and direct access authorizations and security measures for automated systems.
However, the fact that a particular computer program may be classified as "sensitive" under this exemption from the disclosure and copying requirements of subsection (1), in no way provides any authorization, express or implied, for the public agency to acquire a copyright for the programs in question.
The answer to your first question makes it unnecessary to answer your second question.
In conclusion, I am of the opinion that, unless legislatively or judicially determined otherwise, the clerk of the circuit court does not have the authority to copyright computer programs for certain financial and accounting functions developed by his staff.
Sincerely,
Jim Smith Attorney General
Prepared by:
Craig Willis Assistant Attorney General