Dear Mr. Ardaman:
You have asked for my opinion on substantially the following questions:
1. Does a Neighborhood Improvement District created by ordinance pursuant to Section 163.511, Florida Statutes, have the power to borrow money to carry out the purposes of such district?
2. If the answer to Question One is yes, can a Neighborhood Improvement District created by ordinance pursuant to Section 163.511, Florida Statutes, pledge its revenue from special assessments and/or ad valorem taxes as security for a loan?
Question One
According to your letter, the City of DeBary created the Orlandia Heights Neighborhood Improvement District by ordinance approved by referendum. The district was intended to generate revenue to be used for roadway repairs and improvements by levying special assessments or ad valorem taxes within the district. The district was created pursuant to section 163.511, Florida Statutes, and was granted all powers provided under section 163.514, Florida Statutes, except to the extent any powers are set forth by the enabling ordinance.
Part IV, Chapter 163, Florida Statutes, is the "Safe Neighborhoods Act."[1] The act authorizes the governing body of a municipality or county to form safe neighborhood improvement districts through the adoption of a planning ordinance.[2] Such an ordinance is to specify that safe neighborhood improvement districts may be created by one or more of the methods specified in the act.[3]
Section 163.511(1), Florida Statutes, states that the ordinance adopted to authorize creation of a special neighborhood improvement district may authorize the district "to levy an ad valorem tax on real and personal property of up to 2 mills annually"[4] and may provide for "the use of special assessments to support planning and implementation of district improvements . . . ."[5] The ordinance creating a special neighborhood improvement district may authorize the exercise of the power of eminent domain but any property identified for eminent domain must be approved by the local governing body before eminent domain procedures are exercised.[6] Nothing in section163.511, Florida Statutes, authorizes a special neighborhood improvement district to borrow money to carry out the purposes of the act. In contrast, section 190.011(4), Florida Statutes, specifically authorizes community development districts to borrow money, and sections163.568(2)(h) and 163.370(2)(g), Florida Statutes, authorize regional transportation authorities and community redevelopment agencies to borrow money.
As a statutorily created entity, a special neighborhood improvement district may only exercise such powers as have been expressly granted by law or may be necessarily implied therefrom in order to carry out an expressly granted power.[7] Any reasonable doubt as to the lawful existence of a particular power sought to be exercised must be resolved against the exercise thereof.[8] The implied powers accorded to administrative agencies must be indispensable to powers expressly granted, that is, those powers that are necessary or fairly or reasonably implied as an incident to those powers.[9]
Further, in section 163.511, Florida Statutes, the Legislature has expressed the manner in which special neighborhood improvement districts may levy and collect funds to accomplish the purposes of the district. The statute recognizes that a district may levy an annual ad valorem tax[10] and may use special assessments[11] for district purposes. When the Legislature has directed how a thing shall be done, that is in effect a prohibition against its being done in any other way.[12]
Therefore, it is my opinion that a Neighborhood Improvement District created by ordinance pursuant to section 163.511, Florida Statutes, does not have the power to borrow money for district purposes.
Question Two
In light of my response to your first question, no discussion of your second question is required.
Sincerely,
[1] Section 163.501, Fla. Stat.
[2] See s. 163.504(1), Fla. Stat
[3] See ss. 163.506, 163.508 and 163.511, Fla. Stat., which establish the procedures for the creation of these districts by the local governing body of a municipality or county.
[4] Section 163.511(1)(b), Fla. Stat.
[5] Section 163.511(1)(c), Fla. Stat.
[6] Section 163.511(1)(g), Fla. Stat.
[7] See Halifax Drainage District of Volusia County v. State,185 So. 123, 129 (Fla. 1938); State ex rel. Greenberg v. Florida StateBoard of Dentistry, 297 So. 2d 628
(Fla. 1st DCA 1974), cert. dismissed, 300 So.2d 900
(Fla. 1974); City of Cape Coral v. GAC Utilities, Inc., of Florida,281 So. 2d 493 (Fla. 1973). And see, e.g., Ops. Att'y Gen. Fla. 02-30 (2002) and 04-48 (2004); 05-44 (2005).
[8] Id.
[9] See, e.g., Gardinier, Inc., v. Florida Department of PollutionControl, 300 So. 2d 75, 76 (Fla. 1st DCA 1974);Williams v. Florida RealEstate Commission, 232 So. 2d 239, 240 (Fla. 4th DCA 1970).
[10] Section 163.511(1)(b), Fla. Stat.
[11] Section 163.511(1)(c), Fla. Stat.
[12] Alsop v. Pierce, 19 So.2d 799, 805-806 (Fla. 1944); Dobbs v. SeaIsle Hotel, 56 So. 2d 341, 342 (Fla. 1952); Thayer v. State,335 So. 2d 815, 817 (Fla. 1976).